# Tisdale, Ex'or, *v.* Maxwell.

### Action on Promissory Notes and Accounts.

1. *Promissory note payable to two persons; prima facie import of.*—A note payable to two persons, *prima facie*, imports that each has a joint and coeval interest; but it may, nevertheless, be shown that the consideration moved from them in separate and unequal amounts and values.

2. *Same; collections under; when subject of set-off by executor of one of the payees, when such by the other.*—The executor of one of the payees, when sued by the other or another demand, may set-off against him the amount in excess of his share, which the plaintiff collected on such note.

3. *Transaction with deceased person; what does not involve.*—On an issue in such a case, as to the interest which the respective payees had in such a note, the plaintiff is a competent witness to prove the consideration of the note, who owned the property which formed that consideration, and its value; such evidence, on his part, does not involve any "transaction with, or statement by" the decedent, within the meaning of § 3058 of the Code.

4. *Same; what constitutes.*—Any understanding between the two, by which the note was made payable to both, or by which the testator was to take certain property turned over by the makers of the note, etc., would involve a transaction with the decedent; and the plaintiff is not a competent witness, in his own behalf, to prove such facts.

5. *Promissory note, giving of; what presumptive evidence of.*—The giving of a note is *prima facie* evidence of the settlement of all previous accounts

[Tisdale, Ex'or, v. Maxwell.]

between the parties; but no such presumption arises as to notes previously given.

6. *Same; presumption as to ownership of.*—Where a note, payable to two persons (not partners), is found by the executor of one of them, among the papers of his testator, after his death, and is produced on the trial, this is *prima facie* evidence that the note belonged to him in his representative capacity, and was unpaid.

APPEAL from Perry Court of Quarter Sessions.

Tried before Hon. POWHATAN LOCKETT.

This was an action brought by the appellee, Maxwell, against the appellant, Tisdale, as the executor of one W. W. Tarry, to recover the amount of a promissory note made by his testator, on the 8th day of January, 1872, and the balance due upon account between Maxwell and the deceased. On the trial, the appellant introduced in evidence, under a plea of set-off, a note made by Benjamin Ware and Joseph Tarry, and payable to Tarry and Maxwell, stating at the time that he had found the note among the papers of his testator, and that he had been in possession of it ever since; that soon after finding it, he had a conversation with Ben. Ware, one of the makers, who informed him that Maxwell had collected the note. Ware, the maker of the note, was introduced as a witness, and testified that he and his co-maker, Joseph Tarry, had purchased of Tarry and Maxwell two mules, a wagon and harness, and that the note above referred to was given in part payment of the purchase-money, the balance being paid by the sale of a horse to them. That he first applied to defendant's testator to make the purchase, who referred him to the plaintiff, saying he would consent to any trade Maxwell would make with him. He further testified that, after the death of defendant's testator, he had paid all but fifteen dollars on the note to Maxwell. Tisdale also introduced, in support of his plea of set-off, orders to the amount of thirty-two dollars and ninety cents, a draft in favor of one Harwood, drawn by Maxwell, on and paid by his testator, and a due bill in favor of his testator, signed by Maxwell, for eighty dollars, and dated January 7th, 1871. Maxwell was then introduced as a witness in his own behalf, and testified that he was the owner of the wagon and harness and one of the mules sold to Ware and Joseph Tarry. In reply to the question, "what became of the horse which was received in part payment for the wagon, harness and mules," he answered, that "he did not know what had become of it, but that the horse was placed in Tarry's possession, and that he had seen the horse in Tarry's lot." He further testified that he had never sold the horse, or received anything on account of his sale by appellant's testator; that he was living with Tarry at the time the transaction was made.

This testimony was objected to, on the ground that it related to a transaction of plaintiff with defendant's testator, and that witness was, therefore, incompetent to testify concerning it. This witness, on cross-examination, testified that the property for which the note was given, belonged, in part, to him and in part to defendant's testator, and that he made the trade after consulting with him, and with his approval and consent. Witness further testified, that he had never seen the note of Ware and Tarry from the time of the trade to the date of trial. Harwood was introduced as a witness, and testified, that he did not recollect what was the consideration for the draft in his favor; that Maxwell was the agent of Tarry, and frequently settled Tarry's accounts with him, and that he had no recollection of Maxwell's having owed him that amount of money; that his books showed that about the time the draft was drawn, Tarry owed about fifteen dollars, and he had freight bills against him for about nine dollars. He was then asked, might not this draft have been given by Maxwell in part payment of Tarry's account, and replied that it might have been given for that purpose, but he had no recollection of the circumstances; and, on cross-examination, he said it might have been cashed by him, for the accommodation of Maxwell.

This was, in substance, all the evidence, and the court charged the jury that the giving of the note sued on was *prima facie* evidence of the settlement of all previous indebtedness between the parties, up to its date, and that such settlement included the due bill for eighty dollars, given by Maxwell to Tarry, in January, 1871. This charge was excepted to by the appellant.

On a motion for a new trial, the plaintiff, in obedience to the order of the court, remitted the amount of draft of Harwood, which had been included in the verdict rendered for the plaintiff.

W. M. BROOKS, for appellant.

J. W. BUSH, *contra.*

STONE, J.—The note, or agreement, of December 6th, 1871, by Benjamin Ware and Joseph Tarry, to Tarry and Maxwell, imports, *prima facie*, a joint and co-equal interest in the two payees. This, however, does not preclude proof of the true transaction, and that the consideration moved from them, in separate and unequal amounts and values. And if it be shown that such was the real transaction, then if one of the payees collected more than his share of the claim,

[Tisdale, Ex'or, v. Maxwell.]

an action for money had and received would lie against him in favor of the other payee, for such excess of collections. And such excess could also be pleaded and proved as a set-off, against a suit by the party to whom the excess of payment had been made. This, because there is no evidence of a partnership between Tarry and Maxwell.

In the trial of this cause in the court below, it became a material inquiry, how much was the several interest of the two parties, Tarry and Maxwell, in the said note or obligation of Ware and Tarry, and to what extent each had made collections. Maxwell, plaintiff below, was introduced as a witness. He was competent to testify for himself as to all matters involved in the issue, except "transactions with, and statements by" Tarry, the deceased.—Code of 1876, § 3058. It would seem that this question ought, generally, to be of easy solution. Any understanding or agreement between Maxwell and Tarry, by which the note was to be made payable to the two, or, by which Tarry was to take the horse, or, to take him on account of the sum due him, would be a *transaction with* Tarry, to which Maxwell could not testify on his own account. It was competent for him to state the ownership and value of the several pieces of property that made up the consideration, and the fact, if such was the case, that Tarry had possession of the horse, or sold him to another.—See *Cousins v. Jackson,* 52 Ala. 262. The testimony of Maxwell, "that the horse was placed in Tarry's possession," falls within this rule. It was a *transaction with* Tarry, as we understand the bill of exceptions. The court erred in admitting this evidence.

The Court of Quarter Sessions also erred in charging the jury that the giving of the note by Tarry to Maxwell, dated January 8th, 1872, was *prima facie* evidence of the settlement of all previous indebtedness, including the due bill for eighty dollars, given by Maxwell to Tarry, and bearing date January 7th, 1871. The rule is, that the giving of a note is *prima facie* evidence of the settlement of all previous *accounts* between the parties; but no such presumption arises as to notes previously given.—See 1 Brick. Dig. 297, § 645. The possession and production of the note by Tarry's executor, was *prima facie* evidence that the note was his, in his right as executor, and unpaid.—*Jarrell v. Lillie,* 40 Ala. 271.

The various rulings of the court, in regard to the order for $25.68, drawn by Maxwell on Tarry, and in favor of Harwood, were rendered immaterial by the *remititur* of that sum made by the appellee, in pursuance of the order of the court. Should the question come up again, we know no reason why any legal facts and circumstances may not be proved, which

tend to show the consideration of the order, or the fund, if any, against which it was drawn.

Reversed and remanded.